UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KEVIN EUGENE WALKER,

    Plaintiff,

v.                                               Case No. 3:20-cv-5959-LC/MJF

KILOLO KIJAKAZI,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kevin Eugene Walker brings this action under 42 U.S.C. § 405(g) to seek review of a final adverse decision of the Commissioner of the Social Security Administration. Because the Commissioner's decision is not supported by substantial evidence, the District Court should reverse the Commissioner's decision and remand this action for further proceedings.

### I. PROCEDURAL HISTORY

On August 23, 2018, Plaintiff protectively filed an application for supplemental security income ("SSI"), alleging a disability onset date of March 24, 2017. Tr. 76, 158-63.[1] The Social Security Administration ("SSA") denied his claim

---

[1] References to "Tr." refer to the transcript of the Social Security Administration record filed on August 15, 2021. Doc. 8. The page numbers cited herein are those

initially and on reconsideration. Tr. 62-91. On February 27, 2020, Plaintiff, represented by counsel, appeared and testified during a hearing before an Administrative Law Judge ("ALJ"). Tr. 33-58. On April 28, 2020, the ALJ issued a written decision in which he found that Plaintiff was not disabled. Tr. 18-28. The Appeals Council denied Plaintiff's request for review. Tr. 1-3. Thus, the ALJ's decision stands as the final decision of the Commissioner, subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

## II. FINDINGS OF THE ALJ

In denying Plaintiff's claim, the ALJ made the following findings:

1. Plaintiff had not engaged in substantial gainful activity since August 23, 2018, the application date;

2. Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis of the left acromioclavicular (AC) joint, peripheral vascular disease of the right lower extremity, and obesity;

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

---

found on the bottom right corner of each page of the transcript, rather than the page numbers that were assigned by the court's electronic docketing system.

    4.    Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that he can occasionally climb ramps and stairs but can never climb ladders or scaffolds. He can occasionally balance, stoop, kneel, or crawl. He can stand and/or walk for four hours and sit for six hours during an eight-hour workday. He can sit for one hour at a time and then he will need to stand or walk, but for no more than one hour at a time;

    5.    Plaintiff was able to perform past relevant work; and

    6.    Plaintiff was not disabled, as defined in the Social Security Act, from August 23, 2018, through April 28, 2020. Tr. 18-28.

### III. STANDARD

A court's review of the Commissioner's final decision is limited. A court may not "decide the facts anew, reweigh the evidence, or substitute its judgment for that of the [Commissioner]." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Instead, a court reviews to ensure that the Commissioner's decision is supported by substantial evidence in the record and is a result of the application of proper legal standards. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If so, a court cannot disturb the Commissioner's decision. 42 U.S.C. § 405(g); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The threshold for the evidentiary sufficiency in Social Security

cases is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Although substantial evidence is "more than a mere scintilla," it is not a preponderance; it requires only "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Id.*; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

Pursuant to 20 C.F.R. § 416.920(a)-(h),[2] the Commissioner analyzes a disability claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments or combination of impairments that meet or equal those listed in 20 C.F.R. Part 404?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments that prevent past relevant work?

5. Do the individual's impairments prevent other work?

---

[2] Generally, the same legal standards apply to claims for disability insurance benefits ("DIB") and SSI, but separate parallel statutes and regulations exist for DIB and SSI claims. *See* 20 C.F.R. §§ 404, 416. Thus, citations of statutes or regulations found in quoted court decisions in this report and recommendation should be considered to refer to the appropriate parallel provision.

The claimant bears the burden of establishing a severe impairment that keeps him from performing past relevant work. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020) ("A claimant bears the burden at the first four steps."). If the claimant establishes such an impairment, the burden shifts to the Commissioner at Step Five to show the existence of other jobs in the national economy that, given all of the claimant's impairments, the claimant can perform. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). If the Commissioner carries this burden, the claimant then must prove that he cannot perform the work suggested by the Commissioner. *Goode*, 966 F.3d at 1279; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

### IV. PLAINTIFF'S MEDICAL HISTORY AND HEARING TESTIMONY

**A.    Relevant Medical History[3]**

Plaintiff previously filed applications for DIB and SSI alleging disability beginning January 1, 2014. Doc. 14-1. These applications were denied, and the ALJ's decision was affirmed by the United States District Court for the Northern District of Florida. Tr. 22, 36; Doc. 14-2; *Walker v. Berryhill*, Case No. 3:18-cv-334-MCR-HTC, ECF No. 17 (N.D. Fla. Mar. 28, 2019).

---

[3] Plaintiff does not challenge the ALJ's findings with respect to any mental impairments. Thus, the undersigned summarizes only the hearing testimony directly relevant to the issues raised by Plaintiff on appeal.

In the present case, the administrative record contains Plaintiff's medical records that were considered in evaluating Plaintiff's prior DIB and SSI applications. Tr. 268-506. The ALJ noted that these medical records were included in the administrative record only for historical purposes. Tr. 22, 36. These records reflect that Plaintiff had a history of cervical and lumbar degenerative disc disease, asymptomatic hernia, and obesity. Tr. 22.

On August 11, 2018, Plaintiff presented at West Florida Regional Medical Center with coolness to his right leg from his knee down to his foot. Plaintiff reported that his leg appeared pale and that his right great toenail fell off. Tr. 540. He reported "extremity pain." Tr. 541. On exam, Plaintiff's skin was cool.

Plaintiff underwent an arterial bilateral lower extremity ultrasound. The results showed "no evidence to indicate arterial occlusion with predominant triphasic flow. There is demonstration of monophasic flow in the left dorsalis pedis artery, and correlation is recommend [sic] with any history of symptomatology with regards to the left foot. No significant femoral or popliteal arterial stenosis." Tr. 547, 550. Plaintiff's care was transferred to Dr. Christopher Durant, D.O.

Upon reevaluation, Dr. Durant noted that Plaintiff's was "Improved, Resolved." Tr. 547. Plaintiff's Doppler ultrasound demonstrated blood flow bilaterally. *Id.* His leg was warm to touch and was the same feeling in temperature as the opposite leg. Tr. 547-48. His leg was pink in color. *Id.* He had a decreased

pulse, but one was present. Tr. 548. Dr. Durant explained to Plaintiff that Plaintiff had severe peripheral vascular disease and was at risk for losing an extremity to amputation if Plaintiff did not follow up with vascular surgery. Tr. 547. Plaintiff was discharged with instruction to follow up with a vascular surgeon. Tr. 547-48

On October 16, 2018, Plaintiff underwent a vascular lower arterial plethysmography procedure. Tr. 554-55. The procedure results showed a "normal resting ABI study with normal bilateral multi-segment arterial Doppler waveforms and normal bilateral TBI values. There [was] no evidence of obstructive arterial disease." Tr. 554.

On October 18, 2018, Dr. Alexys Hillman, D.O. conducted a consultative examination. Dr. Hillman noted that Plaintiff had "mild nonpitting edema" bilaterally and "varicose veins . . . particularly around the feet." Tr. 563. Plaintiff, however, had no ulcerations or muscle spasms, and his skin appeared normal with no unusual hair distribution, coolness, pallor, rashes, or lesions. *Id.* Additionally, his peripheral pulses were "normal, easily felt, [and] not easily obliterated with pressure." *Id.*

Dr. Hillman noted that Plaintiff used a cane for assistance and indicated that Plaintiff was able to ambulate six feet without the cane. *Id.* Plaintiff was not able to walk on his heels, toes, tandem walk or squat, but Plaintiff was able to bend at his waist and he had "normal straight leg-raise for both sitting and supine." *Id.* Plaintiff's

range of motion in his spine, knees, and ankles was normal. Plaintiff's range of motion in his hips also generally was normal. Tr. 565. Plaintiff's strength in his right leg was 4/5 and his left leg was 5/5. He also had normal reflexes in both lower extremities. Plaintiff, however, had an abnormal filament test and vibration test in his right lower leg. Tr. 564.

In evaluating Plaintiff's peripheral vascular disease and hypertension, Dr. Hillman found "evidence of neuropathy on exam. [Plaintiff] was considered for amputation at time of diagnosis for PVD, but patient refused, wanted second opinion. He was referred to vascular surgery, but due to lack of insurance could not follow up. Requires evaluation by vascular surgery." Tr. 565. In her evaluation of Plaintiff's back issues, Dr. Hillman concluded that Plaintiff's cane was medically necessary "because of instability and lurching." Tr. 566. She also believed Plaintiff would "be a good candidate for OMT for symptomatic relief of pain." Tr. 566.

**B.** <u>**Summary of the Hearing Testimony**</u>

Plaintiff testified that for the past two years he had used a cane to walk "all the time," but he admitted that no physician had prescribed the cane. Tr. 41-43, 49. Plaintiff stated that he could walk twenty to thirty steps. Tr. 49; *see* Tr. 210, 227. Plaintiff stated that his leg swells just above the ankle and that he has "spider veins." Tr. 43. Plaintiff did not use compression socks to reduce the swelling because he felt

that they did not help. *Id.* Instead, to reduce pain and swelling, Plaintiff would lie flat on his back with his legs elevated above his heart. Tr. 43-45.

## V. DISCUSSION

Plaintiff first argues that the ALJ erred at Step Four by not accounting for any limitations caused by Plaintiff's use of a cane. Doc. 14 at 20-24. In support of this argument, Plaintiff asserts that the ALJ did not evaluate Dr. Hillman's medical opinion. *Id.* at 22. In response, the Commissioner argues that the RFC is supported by substantial evidence because the ALJ found that "Plaintiff lacked a prescription for a cane" and "Plaintiff failed to provide the necessary documentation to support a finding that he needed a cane in the workplace." Doc. 15 at 1, 10-12.

At Step Four, the ALJ determines a claimant's RFC, which encompasses a claimant's remaining ability to do work despite his limitations. 20 C.F.R. § 416.945(a)(1); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (per curiam) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). In determining the claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments, severe and non-severe alike. *Schink*, 935 F.3d at 1268-69 (citing *Bowen v. Heckler*, 748 F.2d 629, 634-35 (11th Cir. 1984)); 20 C.F.R. § 416.945(a)(1)-(2) (noting that an RFC accounts for all of the claimant's physical and mental limitations regardless of severity).

"If an ALJ fails to address the degree of impairment caused by the combination of physical and mental medical problems, the decision that the claimant is not disabled cannot be upheld." *Schink*, 935 F.3d at 1269 (citing *Bowen*, 748 F.2d at 634). If, on the other hand, an ALJ's RFC assessment is supported by substantial evidence and is the result of the application of proper legal standards, a court cannot disturb it. *Carnes*, 936 F.2d at 1218. As discussed more fully below, the ALJ's failure to evaluate Dr. Hillman's opinion and the ALJ's failure to explicitly address whether the cane was medically necessary requires remand for additional consideration of this evidence.

A.  **The ALJ Failed to Consider the Opinion That Plaintiff Requires a Cane**

In reaching an RFC determination, the ALJ must consider among other things the opinions from medical sources in the record. Because Plaintiff filed his SSI application after March 27, 2017, 20 C.F.R. § 416.920c governs the ALJ's consideration of Plaintiff's medical sources' medical opinions.[4]

The applicable regulations state that a "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in" various abilities. 20 C.F.R. § 416.913(a)(2). The ALJ does "not defer or give any specific

---

[4] The SSA's new regulations refer to a healthcare worker as a "medical source." 20 C.F.R. § 416.902(i). Thus, this report and recommendation adopts that terminology when referring to Plaintiff's medical providers.

weight, including controlling weight, to any medical opinion(s)" from the claimant's medical sources. *Id.* § 416.920c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022).

Instead, when "a medical source provides one or more medical opinions," the Commissioner will consider the medical source's medical opinions together with the following factors, as appropriate: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 416.920c(a), (c); *Harner*, 38 F.4th at 897. Of those factors, supportability and consistency are the most important for evaluating the persuasiveness of a medical source's medical opinions. 20 C.F.R. § 416.920c(b)(2); *Tucker v. Saul*, No. 4:19-CV-759-RDP, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020); *Mackey v. Saul*, No. 2:18-cv-2379-MGL-MGB, 2020 WL 376995, at *4 n.3 (D.S.C. Jan. 6, 2020), *report and recommendation adopted*, 2020 WL 376247 (D.S.C. Jan. 23, 2020). Although the ALJ must explain how she "considered the supportability and consistency factors for a medical source's medical opinions," the ALJ is not required to explain how she considered the other factors. 20 C.F.R. § 416.920c(b)(2).

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." *Id.* § 416.920c(c)(1); *Rouse v. Kijakazi*, No. 2:20-CV-399-JPK, 2022 WL

218918, at *5 (N.D. Ind. Jan. 25, 2022) (noting that "supportability" is "the extent to which the medical provider's evidence and explanations support his conclusions").

The term "objective medical evidence" includes "signs, laboratory findings, or both." 20 C.F.R. § 416.913(a)(1). The term "signs" includes "one or more anatomical . . . abnormalities that can be observed, apart from [the claimant's] statements (symptoms)," which "must be shown by medically acceptable clinical diagnostic techniques." *Id.* § 416.902(*l*); *id.* § 416.902(n) (defining "symptoms" as the claimant's "own description of [his] physical or mental impairment"). "Laboratory findings" include "one or more anatomical . . . phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques," including "medical imaging (such as X-rays)." *Id.* § 416.902(g).

With respect to consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." *Id.* § 416.920c(c)(2); *Rouse*, 2022 WL 218918, at *5 (noting that "consistency" is "how well the opinion corresponds to the evidence from all sources"); *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 905 (E.D. Mich. 2021). Ultimately, an ALJ's explanation of consistency and supportability is sufficient if it allows the court "to undertake a meaningful review of whether [the ALJ's] reasoning was supported by substantial

evidence." *Pearson v. Comm'r Soc. Sec.*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 3663073, at *2 (S.D. Miss. Aug. 18, 2021); *see Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (noting that an ALJ must "rationally articulate the grounds for her decision").

Here, the ALJ stated, "I have fully considered the medical opinions and prior administrative findings as follows: I considered the opinion of stage agency physician Prianka Gerrish, M.D., finding it most persuasive; however, she did not consider peripheral vascular disease . . . ." Tr. 25, 86-88. The ALJ, however, did not address the supportability and consistency of Dr. Hillman's opinion regarding the medical necessity of Plaintiff's cane. Dr. Hillman stated, "Because of instability and lurching, I do consider his cane to be medically necessary." Tr. 566. The ALJ's failure to state that he considered Dr. Hillman's opinion prevents the District Court from undertaking a meaningful review of the ALJ's decision regarding Plaintiff's RFC. *Sole v. Comm'r of Soc. Sec.*, No. 6:21-CV-292-JA-EJK, 2022 WL 2490502, at *3 (M.D. Fla. June 13, 2022), *report and recommendation adopted*, No. 6:21-CV-292-JA-EJK, 2022 WL 2464461 (M.D. Fla. July 6, 2022). This error is compounded by the fact that there is some evidence in the record of Plaintiff's need for a cane, and the ALJ failed to explicitly find that Plaintiff's cane was not medically necessary.

B.     **The ALJ Failed to Consider the Medical Necessity of Plaintiff's Cane**

When "the record contains information showing a claimant uses a cane, an ALJ should explicitly consider whether the claimant has a medical necessity for using such a device and affirmatively reject [it], if appropriate, so the reviewing [c]ourt can be sure whether he intended to recognize use of a cane." *Irwin v. Comm'r of Soc. Sec.*, No. 2:20-CV-230-MRM, 2021 WL 4077586, at *4 (M.D. Fla. Sept. 8, 2021) (quoting *Ortiz v. Saul*, No. 8:19-cv-199-T-CPT, 2020 WL 1527856, at *4 (M.D. Fla. Mar. 31, 2020)). "[W]hen there is medical documentation about a cane in the record, an ALJ's failure to determine whether the cane is medically necessary or to incorporate the use of a cane into the RFC is legal error." *Terrence F. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1304 (ATB), 2022 WL 1203074, at *3 (N.D.N.Y. Apr. 21, 2022).

If an ALJ does not affirmatively reject the need for a cane, a district court "cannot be sure whether he intended to recognize it." *Wood v. Comm'r of Soc. Sec.*, No. 6:20-CV-963-LRH, 2021 WL 2634325, at *6 (M.D. Fla. June 25, 2021) (quotation omitted); *Randall W.D. v. Saul,* No. 3:19-CV-911, 2020 WL 6939728, at *6 (E.D. Va. Nov. 25, 2020) ("When the record reflects a plaintiff's frequent use of an assistive device, an ALJ's failure to explain the device's omission from the RFC or to provide a narrative discussion on whether the assistive device is medically

necessary, leaves a reviewing court to guess about how the ALJ reached her conclusion."). That is, when an ALJ fails to make an explicit finding regarding a plaintiff's use of a cane, a district court cannot know "whether the ALJ failed to consider the evidence about a cane; found that a cane was not medically necessary; found that the cane was medically necessary but did not impact plaintiff's RFC; or reached some other conclusion." *Terrence F.*, 2022 WL 1203074 at *5.

Here, Dr. Hillman stated that Plaintiff's cane was medically necessary because of Plaintiff's "instability and lurching." Tr. 566. Dr. Hillman's opinion on this matter is backed by her observations that Plaintiff's gait was "generally antalgic, favoring the [right lower extremity] with lurching and significant unsteadiness." Tr. 563. Dr. Hillman also observed Plaintiff could not walk on his heels or toes, could not tandem walk, and could not squat. Tr. 563-64. Additionally, Plaintiff testified that he required a cane to walk, including in his own home.

Thus, the record is replete with evidence that Plaintiff needed a cane to ambulate. The ALJ, therefore, should have addressed this evidence when assessing Plaintiff's RFC. As noted above, the ALJ never explicitly evaluated Dr. Hillman's opinion that Plaintiff's cane is medically necessary for walking. Furthermore, the ALJ discredited Plaintiff's need for a cane simply because no physician had prescribed a cane. A prescription—or lack thereof—is not dispositive, especially for a device that easily is obtainable "over the counter," such as cane. The lack of a

prescription, therefore, is not itself sufficient evidence to reject the medical necessity of a cane. *Aderhold v. Kijakazi*, No. 3:20-cv-5411/LAC/EMT, 2021 WL 3813387, at *11 (N.D. Fla. July 27, 2021) (quoting *Kendrick v. Comm'r of Soc. Sec.*, No. 5:17-cv-244, 2018 WL 4126528, at *3 (M.D. Fla. July 9, 2018)); *see Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir. 2009); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002).

The ALJ's failure to address Plaintiff's need for a cane, including Dr. Hillman's opinion, is reversible error. *See Parker v. Comm'r of Soc. Sec.*, No. 2:16-CV-352-FTM-CM, 2017 WL 1372157, at *9 (M.D. Fla. Apr. 17, 2017); *Pruett v. Colvin*, 85 F. Supp. 3d 1152, 1162 (N.D. Cal. 2015) (holding that an ALJ's failure to address a medical opinion regarding the plaintiff's need for a cane was reversible error); *Robinson v. Astrue*, No. CIV S-06-2453 GGH, 2005 WL 6077067, at *9 (E.D. Cal. Mar. 7, 2005). Without an explanation from the ALJ regarding the medical necessity of Plaintiff's cane, the District Court cannot determine that the ALJ's RFC assessment is supported by substantial evidence. *See Vanever v. Berryhill*, No. 16-CV-1034, 2018 WL 4266058, at *3 (W.D.N.Y. Sept. 6, 2018) (noting that the use of a cane itself might crate functional limitations for a plaintiff that the ALJ must account for in an RFC assessment).

The District Court, therefore, should remand this action for the ALJ to consider Dr. Hillman's opinion, to find whether Plaintiff's cane is medically

necessary, and to make any additional findings required by these issues. Because the Commissioner's analysis may change based on its reconsideration of the issues identified above, the District Court need not address any other issues raised by Plaintiff. *See Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## VI. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1. **REVERSE** the Commissioner's decision and **REMAND** this action to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this report and recommendation.

2. Direct the clerk of the court to close the case file.

At Pensacola, Florida, this 25th day of July, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters.** *See* **N.D. Fla. Loc. R. 72.2;** *see also* **28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation.**

**Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.** An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**